UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10-cr-75 |
| | ) | COLLIER/CARTER |
| KRISTI MILLER | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant, indicted on several federal drug charges, moves to suppress statements she made to law enforcement (Doc. 222) on two grounds: (1) agents improperly induced her to give her statements with false promises of leniency thereby violating the Fifth Amendment and (2) agents questioned her outside the presence of the attorney who was representing her in state court on another criminal matter, thereby violating the Sixth Amendment.[1] I find law enforcement made no improper promises and were not required to question defendant in the presence of counsel who was representing her in an unrelated criminal matter. I further find defendant's statements were voluntarily made following receipt of her *Miranda* rights and voluntary waiver of those rights. Accordingly, it is RECOMMENDED the defendant's motion to suppress be DENIED.

II. Relevant Facts

Defendant has been indicted on charges of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) and conspiracy to possess and distribute pseudoephedrine and iodine in violation of 21 U.S.C. §§ 846 and 841(c).

---

[1] This motion is pending before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

The undersigned held an evidentiary hearing on the defendant's motion to suppress on October 26, 2010. Special Agent David Shelton of the federal Drug Enforcement Agency (DEA) was the only witness to testify. Agent Shelton has thirty-three years of law enforcement experience; twenty-five years of that experience is with the DEA. He has investigated thousands of drug cases. I found him credible and, based on his testimony, I make the following findings of fact.

In September 2009, Shelton was working with Roane County Detective Kris Mynatt investigating methamphetamine manufacturing and trafficking. Kristi Miller was already in custody at the Roane County Jail for a probation violation. Believing that defendant might have information concerning their investigation, Shelton and Mynatt requested that Roane County deputies bring Kristi Miller to Detective Mynatt's office at the Roane County Sheriff's Department for questioning.

When she arrived at the office, Ms. Miller was in handcuffs. Agent Shelton testified that it is his normal practice to have the handcuffs removed, but he couldn't specifically remember if the handcuffs were or were not removed on that occasion. Shelton and Mynatt introduced themselves to defendant and explained that they were investigating methamphetamine manufacturing and trafficking in the area and her name had come up in the investigation. Shelton then advised her of her *Miranda* rights. Specifically, he told her: she had the right to remain silent, anything she said could be used against her in court, she had a right to an attorney and to have an attorney present during questioning. If she could not afford one, an attorney would be appointed for her. If she decided to answer questions at that time without an attorney present and decided at any time that she wanted to stop answering questions, questions would stop. Shelton also told her she didn't have to say anything to him that she didn't want to. He

2

then told her he did not have "a clue" who would be indicted, if anybody, but if she was indicted, he would make certain that the Assistant United States Attorney (AUSA) assigned to her case was aware of her cooperation. He made no other promises to her. He did not ask her if she already had an attorney nor did Mynatt.

Miller agreed to answer the agents' questions. Shelton asked ninety percent of the questions. Her responses to the questions were appropriate and she appeared to understand what he was asking her. The interview was not recorded, and the agents had no written waiver form. The tone of the conversation at all times was polite and amicable. Defendant gave a fairly detailed statement regarding her involvement in methamphetamine manufacturing. Shelton has since made the AUSA assigned to the case aware of her cooperation.

The pretrial services report concerning the defendant indicates that defendant has an extensive criminal record dating back to 2005. At the time Shelton and Mynatt questioned her, she was in custody following the revocation of her probation. She had been on probation after she was convicted in the Roane County Criminal Court for obtaining or attempting to obtain drugs by fraud in violation of Title 40, Chapter 36 of the Tennessee Code Annotated.

### III. Analysis

Defendant offers two arguments why her statements should be suppressed. First, she asserts Shelton lied to her by promising he would help her and implying she would not be prosecuted if she cooperated and gave the agents information. Thus, defendant argues, these promises, made while she was in jail, amount to coercion rendering her statements involuntary and in violation of the Fifth Amendment. Second, defendant contends that at the time she gave her statements, she already had counsel and the agents' initiation of her interview without her counsel present violated the Sixth Amendment.

### 1. Voluntariness of Defendant's Statements - Promises of Leniency

A determination of the voluntariness of a defendant's confession is viewed under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The government bears the burden of proof to show by a preponderance of the evidence that a defendant voluntarily waived his Miranda rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The Sixth Circuit has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003); *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999); *see also United States v. Wrice*, 954 F.2d 406, 411 (6th Cir.1992) ("In order to render a confession involuntary, a promise of leniency must rise to the level of an 'irresistible inducement.'") Further, promises of leniency may be coercive if they are broken or illusory. *United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003).

In this case, Agent Shelton's promise was neither broken nor illusory. Agent Shelton promised only that he would bring defendant's cooperation to the attention of the AUSA – which he did. This promise, to bring defendant's cooperation to the AUSA's attention, was not objectively coercive. "Although a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced, a statement about possible leniency upon cooperation is not generally impermissible." *United States v. Wiley*, 132 F. App'x 635, 640 (6th Cir. 2005); *See, e.g., United States v. Ruggles*, 70 F.3d 262, 265-66 (2d Cir. 1995) (confession voluntary despite promise of leniency if defendant cooperated with law enforcement officials); *United States v. Broussard*, 80

F.3d 1025, 1034 (5th Cir. 1996) (confession voluntary even though officer promised to make defendant's cooperation known to U.S. Attorney); *United States v. Dillon*, 150 F.3d 754, 758 (7th Cir. 1998) (confession voluntary despite agent's promise to bring defendant's cooperation to prosecutor's attention); *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) (confession voluntary because promise to tell prosecutor about cooperation does not establish involuntariness).

Defendant's will was not overborne. Defendant has an extensive criminal record having been charged in eighteen separate situations of numerous different offenses ranging from being a fugitive, forgery, dealing in stolen property, and promoting the manufacturing of methamphetamine. She has been convicted of crimes on eight different occasions. I conclude defendant is fairly "sophisticated" in understanding the fact that her statements can be used against her and that she has a right to counsel. She was not threatened in any way. The conversation was calm, and Shelton was very clear defendant did not have to say anything. She appeared to understand Shelton's questions, and her responses to questions were appropriate. Based on the totality of these circumstances, I conclude Shelton's promise to inform the AUSA of defendant's cooperation did not rise to the level of an irresistible inducement, and defendant made her statements to law enforcement officers after voluntarily and knowingly waiving her *Miranda* rights.

2. Presence of Counsel at Interview

Defendant asserts that at the time she was interviewed by Agent Shelton, she was already represented by an attorney in the matter which lead to her incarceration in the Roane County Jail, and the agents' questioning of her outside the presence of this attorney constituted a denial of

5

counsel in violation of the Sixth Amendment.[2]  After being convicted for obtaining or attempting to obtain drugs by fraud in violation of Tennessee law, defendant was sentenced to two years incarceration, suspended, and placed on probation.  While on probation for the fraud/drug conviction, defendant failed to pass a drug test and was arrested.  Presumably, she had counsel for this probation revocation arising, ultimately, from her conviction on the drug/fraud offense – although there was no testimony or evidence presented to this effect.

The Sixth Amendment right to counsel is offense-specific, meaning invoking one's right to counsel for one offense does not constitute invoking that right for all other offenses.  *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).  However, invoking the Sixth Amendment for one offense invokes it for subsequent offenses, even when those offense have not yet been charged, if they constitute the same offense.  *Texas v. Cobb*, 532 U.S. 162, 173 (2001).  There is no dispute that the crime for which defendant was convicted in the Roane County Criminal Court and the crime for which she was questioned and ultimately charged in this court are separate and distinct offenses; they do not constitute the same offense.  Accordingly, to the extent defendant had invoked her right to counsel for the probation revocation, such invocation did not constitute an invocation for counsel during questioning concerning the federal offenses she presently faces.

IV. Conclusion

---

[2]Defendant did not brief this issue but raised it for the first time at the suppression hearing.

Finding no Fifth or Sixth Amendment violation by agents who questioned defendant at the Roane County Jail in September 2009, it is RECOMMENDED defendant's motion to suppress statements (Doc. 222) be DENIED.[3]

                                                      *s/William B. Mitchell Carter*
                                                      UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).